Good morning. May it please the Court. I'm Louise Betz for the Secretary of Labor. The Secretary respectfully urges this Court to reverse and vacate the Commission's decision and affirm OSHA's citation against Seward Ship's Drydock for a straightforward violation of an important provision of the Respiratory Protection Standard. Can I just back up for a minute in terms of just curiosity about the situation we're in. I gather, I mean, this one-sided argument is obviously unusual, but it's a complicated question. Does this come up very often because the fines aren't much and you have a disagreement with the Commission, which presumably is very important to the Secretary and to the Commission, but not really to the party? That's correct. You know, I think without straying to the area of sort of revealing anything discussed in settlement negotiations, I think it's probably safe to just say that this employer is no longer operating a drydock. Still has an interest in this case because it still exists as an employer and is subject to a penalty, but has just decided not to appear here than just to pay the money. That's correct, and as Your Honor stated, this case is important to the Secretary of Labor because the Commission's decision sets an adverse precedent nationwide. I'd rather see somebody representing the Commission standing right there. The Commission's the lower court, so you know that. We don't, but to fully answer the question, no, this happens very seldom. Typically when an employer challenges a case, even with a low penalty amount, it's because it has an ongoing interest in its record, because it has an ongoing interest in maintaining a practice that OSHA's told it is unlawful, or for a similar reason that sort of affects its future interests. Here, I think to the extent the employer's only interest is a $2,100 penalty, here I am alone. Well, at least we have a brief on the other side that is to say we have the written decision by the Commissioner. Well, I mean, that does raise an interesting point that the posture in this case at the beginning didn't even involve the issue that's now before this court. I may have missed something in your earlier statement. You said sewer dry dock. Did you say they're no longer operating, or they're under a different ownership? They are still in business and under the same ownership, but they no longer operate a dry dock. So they are the same legal entity they were when OSHA issued the citation, but they're not doing this work anymore. They're not doing this type of dry dock work. That's correct. That's my understanding, yes. So the actual issue in this case, at least as I'm inferring what you say, is unlikely to recur, so they have no continuing interest in the particular point. That's right. The only interest in the party is the penalty, which, as you mentioned, is low. So basically, we're dealing with a statute, and you're going to tell us why you're right and the Commission was wrong. That's right. OSHA cited sewership's dry dock for violating paragraph D-1-3 of the standard, the Respiratory Perception Standard, when it exposed employees welding in confined spaces below deck on a barge to visible welding fumes containing numerous toxic substances, including iron oxide and carbon monoxide, and causing respiratory symptoms that employees complained about to the employer. And despite all of these conditions indicating a potential that employees could be harmed by this work, the employer didn't evaluate whether respirators were necessary to protect their health. Paragraph D-1-3 requires employers to quote, identify and evaluate the respiratory hazards in the workplace. This evaluation shall include a reasonable estimate of employee exposures to respiratory hazards, close quote. The threshold question in this case is respiratory hazard. The standard is perfectly clear that where there are respiratory hazards, the employer has to evaluate those hazards, including a hazard mean here. Does it mean the actual presence of contaminants? Does it mean the potential presence of such contaminants? It means the actual presence of such contaminants under conditions that pose the potential for harm. What's that argument? That's the wrong argument for you to make, frankly, because that turns this into an ambiguous regulation which brings us under our deference, which may or may not survive in the Supreme Court. Well, Your Honors, even if our deference doesn't survive, the question is, what does the standard require? And that question is answered by looking at the words of the standard and other indicia of its meaning. And in this case, the Secretary's interpretation and application of the standard reflects its best reading. So the key term in this case is respiratory hazard. And the word hazard is commonly understood and defined in the dictionary to mean something that could be dangerous, not merely... Wait a minute. Could be or is dangerous? That's my question. Something that could be dangerous. When you look up hazard in the dictionary, it says a condition that could pose harm. And so the question here is whether the visible welding fume filling a confined space, knowing that... I'm trying to help you in a way, but so far you're refusing to help, but there's the following argument. I mean, I can state the other side, but the argument I want to make at the moment is hazard means something bad may happen. That's correct, and that is our position. Well, something bad may happen if you're sending somebody into an enclosed space before you see the fumes. That's right. That is to say, it may be that the hazard is... the fact of hazard exists, and therefore the obligation is triggered by the mere fact of going into an enclosed space to be doing the welding before you measure any contaminant in the air. Yes, Your Honor, that is our position. I'm sorry if I wasn't clear about that. It has to include the fact that there is a hazard because welding casts off contaminants that create a risk of harm. That's correct. The respiratory hazards... It's not just going into the closed space, but the fact that this particular activity in the closed space could pose a risk. Yes, Your Honor, and that... And the point, then, is you don't have to wait for the fumes to appear because you know they will appear by the fact of the welding that's about to be undertaken. That's correct, and that was the critical error in the Commission's decision. But here's my question. What's interesting reading the Commission's opinion is that they don't even flag this... the question of what a hazard means. That's correct. As an issue. Did you make the same argument to them? We did, Your Honor. We argued below that the standard applies wherever there's a reasonable possibility of employee overexposure. And particularly the question of what does the word hazard mean? I mean, you did a nice job in your brief to us of demonstrating that the word hazard is used elsewhere in the statute and in the regulations in this sense, but did you do that in your brief to them? Well, one of the problems in this case does relate to the way that the issues were raised and briefed. This issue was raised by the Commission in its decision that, you know, the Secretary had no notice or... Really? There was no notice? They didn't ask you to brief the question? They didn't ask us to brief the meaning of the word hazard. They asked us to brief whether the Secretary's position all along has been the standard applied because there was a reasonable possibility of harm to employees given the type of work that they were doing. And that's still our position here. The emphasis on the meaning of respiratory hazard emerged after the Commission's decision given its odd emphasis on the word the without any analysis of what the word hazard means. So the Commission concluded that because the standard only requires employers to evaluate the respiratory hazards, that therefore it only applies where there's an actual overexposure. To me, the strongest counter-argument to your position is where this thing is, where this section is, which is under a heading called personal protective equipment and which, you know, is in that or it's in... Well, anyway, it's part of every other surrounding discussion is about the choice of respirators, including the heading, right? Yes, Your Honor. The paragraph D-1-3 is under the heading called selection of respirators and the other three subheadings address what type of respirator to select. And somewhere you said, or the Commission said, that this subsection was added later? Yes, so the respiratory protection standard has existed in some form for decades. The current version of the standard was promulgated in 1998. And in that promulgation, this provision was added, but OSHA explicitly noted in the rulemaking that it was added to make explicit a requirement that's can't comply with the standard and determine whether respirators are necessary in the first place without conducting the assessment required by this provision. And in the preamble to the standard, the Secretary made clear that the purpose of this, I won't say new requirement, but new provision to make the existing requirement clear was to determine whether respirators are and in the structure of the standard. And also, you know, the fact that this provision was added after the fact also sort of reinforces the Secretary's position that it's not just limited to how to select a respirator once a determination has been made that respiratory protection is necessary. There's no way really to determine whether respiratory protection is necessary without doing this assessment. What the standard says is that if you have a respiratory hazard, you have to do a reasonable estimate of employee exposures. And what the Commission did is it looked at the OSHA inspection. Now, by the time the OSHA inspection took place, the violation had already occurred. As Judge Fletcher noted, the violation occurred before this welding work even began. Well, that's the argument. Now, let me further Judge Berzon's sort of pushback, which I think is correct. I'm just at subsection D at the top, which is headed selection of respirators. This paragraph requires the employer to evaluate respiratory hazards in the workplace, identify relevant workplace and user factors, and base respirator selection on these factors. That can be read to assume that a respirator is necessary because you're selecting among respirators. You're not saying whether to use one or not. Now, if that's true, that means you've already identified the need for a respirator, and all you're trying to do is figure out which one you're going to use. And that then supports the Commission's decision that, well, this whole section doesn't come into play until you know you need a respirator, not just because something might happen, but because something is happening. So how do you respond to that? I mean, that's the best I can do. That's the Commission's argument. Well, what paragraph D, the opening paragraph of this subsection, says is the paragraph requires the employer to evaluate respiratory hazards in the workplace. And again, that's consistent with the Secretary's position that, of course, the standard only applies where there are respiratory hazards, but the question is, what is a respiratory hazard? And based on the plain meaning of the employees. And so what the employer needs to do is evaluate workplace conditions that constitute respiratory hazards, where there are actually present hazardous substances in the air, and where there's the potential for those substances to harm employee health. There's, I mean, the oddity here, I mean, this is just out of place. It's clearly out of place, because in any sensible system, you would first decide, evaluate the respiratory hazards, decide whether to have a respirator, and then you'd select the respirators. But there doesn't seem to be any connection between this section and, for example, a determination of whether you could use engineering controls or whether you can use respirators. It's just floating there by itself and kind of out of orders. But is there any other provision anywhere that requires an evaluation of the respirator, of the respiratory hazards, for the purpose of deciding whether there, anything needs to be done? And if so, could it be done by engineering controls, which another provision says is preferable, or has to be done by respirators? Is there any other section that says this? No, Your Honor. This is the provision requiring employers to conduct the respiratory assessment to perhaps that the order of the standard doesn't reflect the order in which employers would be doing things, is related to the fact that this provision was added as an amendment after the standard had been in existence for quite a long time. It wasn't, well, right, but it wasn't developed, it wasn't developed at the time that those other provisions were put there. Was there an oral argument before the commission? Do they have oral arguments? They sometimes, they occasionally do, but there was not in this case. I see. You know, the other, the other reason is that determining whether a respirator is necessary, it does require an estimate of employee exposures, but then the determination of whether a respiratory, respirator is necessary is actually made by referencing OSHA's other standards or Section 581 of the OSH Act. You may not be in a position to answer this question. I'll ask it anyway, and you can say I get this decision because if you're trying to protect workers, you would think that there was going, and you're going to use respirators to protect workers, any commonsensical regime would evaluate hazard in the sense of what is likely to happen if I go down into that enclosed space and start welding, that is to say, any sensible regulatory regime would have the policy that the secretary is arguing for. Why is the commission doing this? Where are they, where are they coming from? Your Honor, I don't know the answer to that question. I can say that this was a relatively new commission at the time, and perhaps this is an issue that the commissioners had concerns with from prior practice, or just that they had an intellectual objection. What's the other oddity? You think there'd be other opinions about this someplace in the world? Well, this hasn't come up before. I mean, even in this case, the employer didn't say I wasn't required to do an evaluation. In this case, the employer said I did it by testing the empty spaces when no one was in them. I mean, that was obviously... Curiously, the commission decided on a different ground from the ground on which the ALJ decided, right? That's correct. They just ignored the ALJ's decision, went off on their own frolic, we'll say. That's correct. So before the ALJ, the employer's only argument was that it actually did conduct the assessment. The employer didn't argue it wasn't required to. The secretary argued that testing the empty... But we asked for briefs. Well, the commission asked for supplemental briefing. They did ask for... They did. So, you know, this case got decided on the issues that the employer raised, the reasons that the employer gave for its actions. The employer never said I didn't know I needed to do an assessment. The employer said I did an assessment, and then the commission inserted this issue into the case and requested supplemental briefing. In that supplemental briefing, the employer never argued that hazard doesn't mean hazard in the way... And then the commission issued this decision without even acknowledging that it was assuming this narrow meaning of the word hazard, and emphasizing the word the, and coming down with this interpretation of the standard that makes a key provision of the standard essentially unenforceable. Your answer is, I don't know for sure, I don't want to speculate, but they're nuts. Your word's not mine. But yes, that, you know, that... That's also unusual. Although, if you look at the commissioner's dissent, it is... It surprised me, and I don't understand why that commissioner agreed with the legal principle. If you do look at her dissent, when she analyzed sort of the conditions in the worksite, what she did determine is that these conditions, the conditions that were present before OSHA did this monitoring, did indicate that there was a chance of employee overexposure to the Pell. She, her position, though, was that therefore respirators are necessary, but that's not the secretary's position in this case. OSHA doesn't require respirators unless, you know, there's actual, an actual overexposure. Although, the last sentence of the regulation says, where the employer cannot identify or reasonably estimate the employee exposure, the employer shall consider the atmosphere to be IDLH, which I assume means immediately dangerous to life or health. And it needs a respirator. That's right. So the structure of the standard... If they don't do it, does that lead to the conclusion that they do have to have respirators? I'm sorry, can you repeat the question? If they don't do the identification and evaluation, do they get an order saying, do the identity, you're fine for that, or do they get an order saying you have to have respirators? You mean the abatement of the violation in this case? Yes. Well, so in this case, the abatement would be that before exposing employees to conditions that pose potential harms from respiratory hazards, you need to identify and evaluate those hazards. I read that last sentence saying if you do it, you have to have the respirators. So what that means is that when you have a situation where you're sending employees into an environment where you really have no way of knowing how extensive the exposures are going to be, you have to put them in the most protective respirator possible. Now, I think in many circumstances, employers have a pretty good idea of what kind of respirator is going to be necessary based on prior experience, based on objective data, and so what they would do is they would put employees in the respirator that they think is most appropriate while they test the air to determine whether a different respirator would be better. As I look at what happened in this case, they're doing this work in a hurry-up fashion. The respirators are going to slow them down. That's right. And they just want to send those guys in, get the stuff done, and hope nobody notices. That's right. I mean, even... What I remember from having dealt with this years ago is that workers don't like the respirators, and respirators do pose other problems. So in this case, if what the employer had done was test the air and determine that it was above a PEL, which is certainly plausible, that they would have been required to put administrative and engineering controls in place. So it could be that the actual abatement in this case, if they had done a respiratory statement, a respiratory assessment indicating the potential for overexposures or actual overexposures, would have been engineering controls, in which case employees wouldn't have needed respirators at all. But we don't know what that assessment would have looked like, because SEWER didn't do it. It didn't get the information it needed to determine whether it needed better engineering controls in these entirely unventilated tanks below deck on a barge, or whether it was safe to put employees in those sort of obviously dangerous conditions without getting the information it needed to keep them safe. Any more questions from the bench? Nope. Thank you for coming, General Aska. Thank you very much. Thank you. I hope you enjoy Alaska. The weather's been very nice. It's going to rain tomorrow. Thank you. R. Alexander Acosta, Secretary of Labor, versus Seward Shipyards, Ships, DyeDoc, Inc., submitted for decision. That concludes our session for this morning and for the week. We're adjourned. Thank you.
judges: Tashima, W. Fletcher, Berzon